EISLEBEN et al. v. BROOKS et al.

(Circuit Court of Appeals, Eighth Circuit. May 2, 1910.)

No. 3,125.

1. FRAUDS, STATUTE OF (§ 110*)—CONTRACTS RELATING TO REAL PROPERTY—SUFFICIENCY OF DESCRIPTION.

A written contract, describing its subject-matter as the mineral rights on which the parties of the first part held options and such as they were in process of acquiring "in all or as much thereof as can be had of what is known as the Ouita coal basin, in Pope and Yell counties, in the state of Arkansas, as shown by Branner's Map of the Arkansas Geological Coal Survey, which basin approximates 10,000 acres, more or less," *held* to contain a sufficient description of the lands to meet the requirement of the Arkansas statute of frauds (Kirby's Dig. Ark. 1904, § 3654); the option contracts then held by the first parties, embracing over 5,000 acres, containing a specific description of the lands covered thereby.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 225–236; Dec. Dig. § 110.*]

2. MINES AND MINERALS (§ 54*)—CONTRACT OF SALE—MEASURE FOR BREACH.

Where a contract for the purchase by defendants from plaintiffs of the mineral rights in certain lands, for which plaintiffs held options, gave defendants the option to furnish funds to have the lands drilled, in which case they were bound to take only such as were shown to contain a coal vein, or to accept all the lands without drilling, in an action for breach of such contract by defendants by refusing to take the lands or to furnish the drilling fund, plaintiffs were not entitled to recover the contract price for all the lands and also the cost of drilling machinery purchased by them.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 151; Dec. Dig. § 54.*]

3. MINES AND MINERALS (§ 54*)—CONTRACT OF SALE—BREACH OF CONTRACT TO FORM CORPORATION—DAMAGES.

In an action for breach of a contract by which defendants agreed to purchase from plaintiffs at a stated price the mineral rights in certain lands and to subscribe and pay for one half of the stock in a corporation to be organized by the parties, the other half to be issued to plaintiffs, where the corporation was to repay to defendants the amount paid by them for the mineral rights which exceeded the capital to be paid in by them, plaintiffs were not entitled to have the value of the stock so to be issued to them considered as an element of damages, in the absence of any evidence as to the value of the mineral rights upon which alone the value of the stock depended.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 151; Dec. Dig. § 54.*]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Action by William Brooks and John H. Ganner against Louis Eisleben, H. C. Reiner, and W. A. Miller. Judgment for plaintiffs, and defendants bring error. Reversed.

James C. Jones and Jacob Klein (Jones, Jones, Hocker & Davis, Thomas H. Sprinkle, and Klein & Hough, on the brief), for plaintiffs in error.

Charles A. Houts (Jeff Davis, U. L. Meade, and Johnson, Houts, Marlatt & Hawes, on the brief), for defendants in error.

Before SANBORN, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

RINER, District Judge. This was an action at law to recover damages for the breach of a contract. In the third amended petition the defendants in error, hereafter called the plaintiffs, after setting out the jurisdictional facts, alleged, in substance, that on the 14th of May, 1907, they had acquired, and were then the holders and owners of, options entitling them to purchase from the owners thereof the coal and mineral rights in and under 5,052.51 acres of land, located in what is known as the "Ouita coal basin," in Pope county, Ark., as shown by Branner's Land Map of the Arkansas Geological Survey; that the land was specifically described in the options; that the plaintiffs, under the options, were entitled to purchase said coal and mineral rights at an average price of $1.10 per acre; that these facts were known to the plaintiffs in error, hereafter called the defendants; that on the 14th of May, 1907, the plaintiffs were without the money and means necessary to acquire the coal and mineral rights under said option; that the defendants knew this, and, being desirous of acquiring said coal and mineral rights, and other coal and mineral rights in the Ouita coal basin, in Pope and Yell counties, Ark., the plaintiffs, on the 14th of May, 1907, as parties of the first part, entered into a contract in writing with the defendants, as parties of the second part, by the terms of which it was agreed that the plaintiffs should convey, by proper conveyances, to the defendant Eisleben, as trustee, or to his successor in person, or corporation, all of said coal and mineral rights in said coal basin then held under options by the plaintiffs, and such other mineral rights as the plaintiffs might thereafter acquire; that the parties to the contract should thereafter organize a corporation, under the laws of Arkansas, with a capital stock fully paid up and nonassessable, to which capital stock the defendants were to subscribe and pay for, in cash, the amount of $50,000; that, in addition to certain compensation to be paid to the plaintiffs for services in securing options on said coal and mineral rights and in organizing and promoting the business of the corporation, the parties of the first part were to receive under the terms of the contract one-half of the capital stock of the corporation; that by the terms of the contract the defendants undertook and agreed to furnish for immediate use a sum of money sufficient to drill said basin, and undertook and agreed that, in the event they failed to furnish said drilling fund, they would accept said mineral rights without drilling the land so optioned, and would pay the plaintiffs the sum of $15 per acre therefor; that, upon the execution and delivery of said

contract, plaintiffs proceeded to and did obtain options to purchase the coal and mineral rights in and under 284.50 additional acres of land in said basin; that by the terms of the options the plaintiffs were entitled to purchase said additional coal and mineral rights at an average price of $1.10 per acre; that the plaintiffs thereupon, on instructions from the defendants and in pursuance of the contract, proceeded to purchase certain drills and equipment necessary to drill said land, at a cost and expense of $3,000, a part of which cost and expense the plaintiffs paid, and for the balance of which they became liable.

It is then alleged that after the plaintiffs had acquired the additional options, and after they had purchased the drills and equipment, the defendants failed and refused to furnish the drilling fund, and failed and refused to pay for the drills and equipment so purchased by the plaintiffs; that they failed and refused to organize, or assist in organizing, a corporation as provided in the contract, and failed and refused to accept the mineral rights upon which the plaintiffs held options, and failed and refused to pay $15 per acre, or any part thereof, repudiated the entire transaction, and notified the plaintiffs that they would not carry out and perform the terms and provisions of the contract. It is further alleged in the petition that the plaintiffs have performed all of the terms and provisions of the contract by them to be performed; that they have been and are willing to convey or cause to be conveyed to the defendants, or to the defendant Eisleben, as trustee, or to a corporation when formed, the coal and mineral rights upon which they held options. It is then alleged that, by reason of the failure of the defendants to perform their part of the contract, plaintiffs were unable to exercise their options and acquire the mineral rights thereunder, and claim that they have been damaged in the sum of $74,185.30. It is also alleged that, by reason of the failure and refusal of the defendants to pay for the drills and equipment purchased by the plaintiffs, the plaintiffs have been further damaged in the sum of $3,000; that by reason of the failure and refusal of the defendants to organize or assist in organizing a corporation, one-half the capital stock of which was to be delivered to the plaintiffs, the plaintiffs have been further damaged in the sum of $25,000, and pray judgment against the defendants in the sum of $102,185.30.

To this petition the defendants answered, first, by a general denial; second, that the contract which was signed by them had never been delivered, and that at the time it was signed it was well understood between the parties, although not expressed in the contract, that it was not to take effect and be a binding contract upon them until seven other persons, in addition to the three who signed the contract, who were to be men of sufficient financial ability to contribute their share of the money, had signed it, and that each of the ten persons signing should obligate himself and become liable under the contract only to the extent of $5,000; that ten persons did not subscribe their names to the contract, but only the three defendants, and for that reason the contract was never delivered to the plaintiffs, and was not binding upon the defendants. For a third defense it was alleged that the defendants did not sign the contract described and set out in the plaintiffs' third amended petition; that before the contract was executed the defend-

ants and several other persons agreed with the plaintiffs upon the terms and conditions which were to be embodied in a contract to be prepared by Mr. Reinholdt, assistant cashier of the National Bank of Commerce, and to be approved by his attorney; that he prepared such a contract and delivered it to the plaintiffs, with a note addressed to Mr. Eisleben, and handed it to the plaintiffs to be presented to the defendants for signature; that the plaintiffs fraudulently switched the contract prepared by Mr. Reinholdt, and substituted another contract which they had prepared, and stated to the defendants that that was the contract Mr. Reinholdt had prepared, and by reason of these fraudulent misrepresentations they were induced to sign the contract upon which this action is based. They further set up as a fourth defense that the plaintiffs had been guilty of misrepresentation as to the character of the land; that they represented that the mineral rights were worth millions; that the defendants had no knowledge of coal or mineral rights, and relied entirely upon the representations made by the plaintiffs, and in reliance thereon entered into the contract; that after the contract was signed they found the representations were fraudulent, the land was not valuable as coal land, and for that reason the contract was fraudulently obtained from them. For a fifth defense they set up the statute of frauds of the state of Arkansas, and insist that the description of the lands is not sufficient to support an action for breach of the contract.

The reply was a general denial. A trial was had in January, 1909, which resulted in a verdict and judgment in favor of the plaintiffs in the sum of $79,921.48. The contract upon which this action is based is in the following words:

"Memorandum of agreement made and entered into in duplicate at St. Louis, Missouri, this 14th day of May, 1907, by and between William Brooks and John H. Ganner, both of Russellville, Arkansas, parties of the first part, and L. Eisleben, H. C. Reiner, W. A. Miller, all of St. Louis, Missouri, parties of the second part, witnesseth: That the parties of the first part are the owners of and holders of options on the mineral rights, and are in process of acquiring under purchase, options, and leases other mineral rights in all, or as much thereof as can be had, of what is known as the 'Ouita coal basin,' in Pope and Yell counties, in the state of Arkansas, as shown by Branner's Map of the Arkansas Geological Coal Survey, which basin approximates 10,000 acres, more or less. Money is needed for the immediate prospecting of and the purchasing of said mineral rights from said first parties, and the parties of the second part agree to furnish such funds.

"The parties of the first part agree to convey by proper deeds and transfers to L. Eisleben, of St. Louis, Missouri, as trustee, or his successor in person or corporation, all of said mineral rights are now owned by them or whether they acquire an option thereon, or whether they acquire them by purchase, options, or leases at any time in the future. The said parties of the second part agree to furnish for immediate use a drilling fund enough to sufficiently drill said basin, otherwise to accept same without drilling, and as said property is drilled to accept for said trustee, or his successor, the mineral rights under any and all lands in said basin, which are now and in the future may be owned, purchased, optioned, or leased by said first parties, which are shown by ordinary methods of drilling to contain a continuation of the Ouita strata or vein of coal, paying to said first parties fifteen dollars ($15.00) cash per acre for the same, upon conveyance to said trustee or successor as above.

"Upon completion of said drilling and purchasing, or before if deemed advisable, the parties hereto agree to organize a corporation for the division of and

further development of said properties, and to which corporation the parties of the second part hereby subscribe and agree to pay in the sum of fifty thousand ($50,000) dollars cash, and which organization shall be duly incorporated under the statute laws of the state of Arkansas, and whose capital stock shall be issued fully paid and nonassessable.

"The capital stock of said corporation shall be issued and divided as follows: The said parties of the first part are to receive one-half of said stock and the parties of the second part are to receive one-half of said stock. It is understood that the corporation thus formed shall refund to said second parties the amount of money paid out by them to first parties in the purchasing of said mineral rights. In the perfecting of the arrangements under this contract, it is considered and understood that the development of said properties on an extensive scale shall be carried into effect, and that no less than three fully equipped modern, 500-ton daily, plants shall be put into operation just as soon as the market by proper advertising, soliciting, yarding, etc., will justify.

"The situation being, however, that the parties of the first part are unable to furnish capital to assist in the carrying of said operation into effect, it is hereby understood and agreed, and is the chief consideration to first parties in this contract, that said second parties shall furnish or acquire for said corporation the necessary capital for said development, and to protect first parties' interests in said corporation against any and all obligations of said corporation until such time as said corporation shall have accumulation sufficient working capital to justly protect first parties' interests therein."

Numerous errors are assigned, but in the view we have taken of this case it becomes unnecessary to discuss them separately. The writer of this opinion is inclined to the view that the contract does not meet the requirements of the statute of frauds of Arkansas, for the reason that it does not contain a sufficient description of the lands containing the mineral rights which were the subject of the contract. A majority of the court, however, are of the opinion that the description is sufficient. That objection is, therefore, overruled, and we pass to notice some of the provisions of the contract, and certain instructions given by the court to the jury.

The contract provided:

"The said parties of the second part agree to furnish for immediate use a drilling fund enough to sufficiently drill said basin, otherwise to accept same without drilling, and as said property is drilled to accept for said trustee, or his successor, the mineral rights under any and all lands in said basin, which are now and in the future may be owned, purchased, optioned, or leased by said first parties, which are shown by ordinary methods of drilling to contain a continuation of the Ouita strata or vein of coal, paying to said first parties fifteen dollars ($15.00) cash per acre for the same, upon conveyance to said trustee or successor as above."

It will thus be seen that the defendants under the contract had the option to furnish the money for drilling, in which case they were only required to take such land as, by the ordinary methods of drilling, showed the land to contain a continuation of the Ouita strata or vein of coal, or, if they declined to furnish the money for drilling, then they were to take all of the mineral rights in or under the land mentioned in the contract. The plaintiffs' suit was based upon their right to recover $15 per acre for the entire acreage, and the court instructed the jury upon the theory that they could recover for the entire acreage, and also instructed that the plaintiffs were entitled to recover for the amount which they had expended in procuring machinery, drills for drilling, and labor in connection therewith.

This instruction, under the terms of the contract, was clearly error. The plaintiffs were not entitled to recover for both the mineral rights in all of the land and also for the expense of drilling; for if the defendants elected, as the contract provided, to furnish the funds for drilling, then they were only obliged to take such part of the lands as were shown, by the ordinary methods of drilling, to contain a continuation of the Ouita strata or vein of coal.

The contract further provided:

"Upon completion of said drilling and purchase, or before if deemed advisable, the parties hereto agree to organize a corporation for the division of and further development of said properties, and to which corporation the parties of the second part hereby subscribe and agree to pay in the sum of fifty thousand ($50,000) dollars cash, and which organization shall be duly incorporated under the statute laws of the state of Arkansas, and whose capital stock shall be issued fully paid and nonassessable.

"The capital stock of said corporation shall be issued and divided as follows: The said parties of the first part are to receive one-half of said stock and the parties of the second part are to receive one-half of said stock. It is understood that the corporation thus formed shall refund to said second parties the amount of money paid out by them to first parties in the purchasing of said mineral rights."

In relation to the capital stock of this corporation, the court charged the jury as follows:

"As to the second item, the claim is the contract shows they agreed to pay for one-half of the capital paid up, $100,000, to the extent of $50,000; and the plaintiffs in their petition say that the value of that was $25,000. So they would be entitled to the value of one-half of that stock, whatever that was."

After the jury had retired they requested further instructions, and by order of court were returned to the courtroom, and the court gave them the following additional instructions:

"The court instructs you that, in addition to these damages, the plaintiffs are entitled to whatever damages they sustained. That is, if you, gentlemen of the jury, determine that the stock would have been worth $25,000 if it had been turned over to them, you may assess that. If you find it was worth less, you will assess such an amount as you think it would have been worth if the company had been organized and turned over to them. It is discretionary with you as to the amount."

This element of damages, in any possible view that may be taken of the case, was too remote. The capital stock was to be paid for, $50,-000 in cash by the defendants, and by the transfer to it of the mineral rights. The corporation assumed an indebtedness. It was to repay to the defendants the amount of money paid to the plaintiffs for the purchase of the mineral rights in or under the lands specified in the contract. The value of the stock would therefore depend entirely upon the value of the mineral rights, and as to the value of the mineral rights there is not a scintilla of evidence in the case. It was error, therefore, for the court to submit the value of this stock to the determination of the jury.

For the errors noticed, the judgment must be reversed, with instructions to grant a new trial.